IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CODY B.,[1]                                    3:19-cv-01293-BR

          Plaintiff,                           OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.


**ARI D. HALPERN**
Halpern Law Group, P.C.
62910 OB Riley Rd
Suite 100
Bend, OR 97703
(541) 388-8410

          Attorneys for Plaintiff

**SCOTT ASPHAUG**
Acting United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

_____

          [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1  - OPINION AND ORDER

**WILLY LE**
Acting Regional Chief Counsel
**SARAH L. MARTIN**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3705

       Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Cody B. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


### ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI on February 27, 2014, alleging a disability onset date of November 1, 2013.  Tr. 359.[1] The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on September 25, 2015.  Tr. 64-95.  At the hearing Plaintiff was represented by an

_____

[1] Citations to the official transcript of record filed by the Commissioner on January 17, 2020, are referred to as "Tr."

attorney, and Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on March 21, 2016, in which he found Plaintiff was not disabled, and, therefore, Plaintiff was not entitled to benefits.

On July 5, 2017, the Appeals Council entered an order in which it remanded the matter to the ALJ to provide a rationale for assessing a residual functional capacity (RFC) that permitted medium work as opposed to an RFC that limited Plaintiff to light work.  Tr. 202.

An ALJ held a hearing on remand on May 11, 2018.  Tr. 10-63. At the hearing Plaintiff was represented by an attorney and a VE testified.  On July 10, 2018, the ALJ issued a decision on remand in which he found Plaintiff is not disabled and, therefore, Plaintiff is not entitled to benefits.  Tr. 207-21.  On June 19, 2019, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on June 5, 1988; was 27 years old at the time of the first hearing; and was 29 years old at the time of the second hearing.  Tr. 359.  Plaintiff has a tenth-grade education.  Plaintiff does not have any past relevant work experience.  Tr. 219.

Plaintiff alleges disability due to insomnia, post-traumatic stress disorder (PTSD), "back pain/scoliosis," bilateral knee pain, pancreatitis, depression, and fibromyalgia.  Tr. 382.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 215-19.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42

U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

### I.   **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 416.920.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(c).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must

assess the claimant's RFC.  The claimant's RFC is an assessment
of the sustained, work-related physical and mental activities the
claimant can still do on a regular and continuing basis despite
limitations.  20 C.F.R. § 416.945(a).  *See also* Social Security
Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8
hours a day, for 5 days a week, or an equivalent schedule."  SSR
96-8p, at *1.  In other words, the Social Security Act does not
require complete incapacity to be disabled.  *Taylor v. Comm'r of
Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing
*Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work the claimant has done in the past.  20 C.F.R.
§ 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also
Keyser*, 648 F.3d at 724.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,

7  - OPINION AND ORDER

appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity after his February 27, 2014, alleged onset date.  Tr. 210.

At Step Two the ALJ found Plaintiff has the severe impairments of "history of pancreatitis," lumbar degenerative disc disease with scoliosis, "cortical defect bilateral knees," attention-deficit hyperactivity disorder (ADHD), depressive disorder, anxiety disorder, personality disorder, borderline intellectual functioning, and substance abuse.  Tr. 210.  The ALJ found Plaintiff's fibromyalgia is not a medically determinable impairment.  Tr. 210.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  He can occasionally balance, stoop, kneel, and crouch, but never crawl.  [Plaintiff] can tolerate occasional exposure to workplace vibrations, but no exposure to workplace hazards such as unprotected heights and exposed, moving machinery.  He requires the ability to alternate between sitting and standing at will while remaining on task.  [Plaintiff] can perform

> simple, routine tasks that require only basic
> workplace judgment.  He can tolerate occasional
> contact with supervisors and coworkers, but no
> contact with the general public.  [Plaintiff]
> cannot engage in team-based work.  He can tolerate
> occasional changes to work routines or processes.
> He requires a 10-15 minute work break every two
> hours.

Tr. 213.

At Step Four the ALJ found Plaintiff does not have any past relevant work experience.  Tr. 219.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy.  Tr. 219. Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) found at Step Two that Plaintiff's fibromyalgia is not a medically determinable impairment; (2) partially rejected Plaintiff's testimony; (3) partially rejected the opinions of examining physicians, examining psychologists, and reviewing psychologists; (4) partially rejected the statement of Sean Tabayoyon, treating counselor; and (5) found at Step Five that Plaintiff can perform other work in the national economy.

## I.   The ALJ did not err at Step Two

Plaintiff asserts the ALJ erred at Step Two when he found Plaintiff's fibromyalgia is not a medically determinable impairment.

9  - OPINION AND ORDER

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 416.920(a)(4)(ii); *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.921(a), (b). Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervisors, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id.*

To be included at Step Two the record evidence concerning an impairment must include "signs - the results of medically acceptable clinical diagnostic techniques, such as tests - as well as symptoms, *i.e.*, [the claimant's] representations regarding [his] impairment." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005)(quotation omitted).

The Ninth Circuit has held when the ALJ has resolved Step Two in a claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant at Step Two

if the ALJ properly considers the omitted condition later in the sequential analysis. *Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005)(any error in omitting an impairment from the severe impairments identified at Step Two was harmless when Step Two was resolved in claimant's favor).

As noted, Plaintiff asserts the ALJ erred when he found Plaintiff's fibromyalgia is not a medically determinable impairment.  The ALJ noted there is not any evidence in the record of "an appropriate [fibromyalgia] workup including ruling out other etiologies consistent with Social Security Ruling 12-2p."  Tr. 210.  In addition, the ALJ pointed out that a June 2014 reference to "tender points" by a physical therapist is not a diagnosis of fibromyalgia and is insufficient to establish fibromyalgia as a medically determinable impairment.

The Court, therefore, concludes on this record that the ALJ did not err when he failed to find at Step Two that Plaintiff's fibromyalgia is a medically determinable impairment.

## II.  The ALJ did not err when he partially rejected Plaintiff's testimony.

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.

"First, the ALJ must determine whether the claimant has

presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show his "impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so."  *Garrison*, 759 F.3d at 1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same). General assertions that the claimant's testimony is not credible are insufficient.  *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the May 11, 2018, hearing that he has

difficulty driving because he "has a hard time with [his] vision and [his] legs hurt constantly."  Tr. 26.  Plaintiff stated he has to get out of the car and stretch after "15 [or] 20 minutes and stretch [his] legs and . . . get moving because it hurts . . . being in one spot."  Tr. 26.  Plaintiff also stated he cannot take public transportation because his "anxiety gets too high."  *Id*.  Plaintiff testified he has "stabbing pain" in his back, stomach, and knees from pancreatitis and "fibromyalgia problems."  Tr. 32. Plaintiff stated he can sit "for 20 minutes or so" before he needs "to stand for a minute."  Tr. 42. Plaintiff testified he can stand for five or ten minutes before he needs to "take a break," can walk for a block and a half, and can lift very little weight.  Tr. 42.  Although they are not prescribed by a medical professional, Plaintiff uses a cane and knee braces because his legs feel weak.  Plaintiff stated he suffers from anxiety, depression, anger, and PTSD.  Plaintiff testified he has missed appointments because of his anxiety and pain, that he "can't even get around water" due to PTSD, and sometimes he gets angry and "flips out" or "blows up" at people. Tr. 38.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not

entirely consistent with the medical evidence and other evidence
in the record." Tr. 214. Specifically, the ALJ noted an MRI of
Plaintiff's right knee did not show any abnormalities and Stephen
Roesler, M.D., treating orthopedist, advised Plaintiff that
"[t]here is nothing to offer him from an orthopedic standpoint."
Tr. 449. In addition, x-rays of Plaintiff's knees indicated
Plaintiff's patella "appears normally located. No evident
displaced fracture, compartmental narrowing, or joint effusion."
Tr. 479. Similarly, x-rays of Plaintiff's spine reflected
"minimal S-shaped scoliosis," mild disc-space narrowing at the
lumbrosacral junction, and "no evident spondyloisthesis."
Tr. 479, 616. The ALJ noted a March 20, 2018, abdominal and
pelvic CT scan showed "no CT evidence of pancreatitis. No
evidence of diverticulitis or appendicitis. No GU stone."
Tr. 1041. The ALJ also noted Plaintiff's stated limitations on
sitting are inconsistent with the fact that Plaintiff drove a
friend to and from Yakima and he drives frequently between Salem
and Portland.

The Court concludes on this record that the ALJ did not err
when he partially rejected Plaintiff's testimony regarding the
intensity, persistence, and limiting effects of his symptoms
because the ALJ provided clear and convincing reasons supported
by substantial evidence in the record for doing so.

### III. The ALJ did not err when he partially rejected medical opinions.

Plaintiff asserts the ALJ erred when he partially rejected the opinions of Mahnaz Ahman, M.D., examining physician; Caryn Jackson, M.D., treating physician; Mark Duris, Ph.D., examining psychologist; Thomas Genthe, examining psychologist; and Aaron Burdge, Ph.D., reviewing psychologist.

An ALJ may reject a treating or examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his

15 - OPINION AND ORDER

reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec.
Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining
physician's opinion can constitute substantial evidence if it is
supported by other evidence in the record.  *Id.* at 600.

### A.    Dr. Ahmad

On October 18, 2017, Dr. Ahmad conducted a disability
consultative examination of Plaintiff.  Plaintiff reported being
diagnosed with fibromyalgia; suffering constant body aches,
bilateral knee pain, and lower back pain; and having anxiety and
PTSD.  Plaintiff "appear[ed]" uncomfortable, but was "easily able
to transfer from the chair to the examination table."  Tr. 928.
Plaintiff's "ambulation without his cane is normal."  Tr. 929.
Plaintiff had some restriction in his lumbar spine range of
motion and "tenderness on palpation and percussion all over the
spine," but flexion in his knee joints was normal.  Tr. 929-30.
Plaintiff's motor strength/muscle bulk and tone was "5/5 in the
bilateral upper extremities, including grip; 4/5 in bilateral
lower extremities.  Normal bulk and tone.  No atrophy noted."
Tr. 930.  Plaintiff reported in the past he had been on
"Percocet, methocarbamol, and Naprosyn for pain.  However, since
he moved from Washington, his new primary care provider refused
to prescribe these medicines."  Tr. 927.  Dr. Ahmad noted
"chronic opioid [*sic*] is not an appropriate pain management
strategy for long-term."  Tr. 931.  Dr Ahmad, therefore,

recommended Plaintiff undergo "a complete medical evaluation.  He has not had any recent imaging of his back or his knees.  The workup should begin with plain x-rays. . . .  He needs to be seen by orthopedics after the x-rays to see if he could benefit from injections or arthroscopic procedure.  Physical therapy would also be helpful."  Tr. 931.  Dr. Ahmad stated Plaintiff can perform "mild to moderate activities"; can stand and walk less than two hours in an eight-hour workday; can sit for two hours in an eight-hour workday; and can lift, carry, push, and pull "10 pounds both occasionally and frequently."  *Id*.

The ALJ gave Dr. Ahmad's opinion "little weight" on the grounds that Dr. Ahmad saw Plaintiff only one time and relied heavily on Plaintiff's subjective complaints.  The ALJ also noted the imaging of Plaintiff's knees and spine in the record does not support Dr. Ahmad's assessed limitations.  Finally, the ALJ stated Dr. Ahmad's opinion is inconsistent with Plaintiff's normal gait and station and with Plaintiff's normal bulk and tone in his lower extremities.

On this record the Court concludes the ALJ did not err when he partially rejected Dr. Ahmad's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

**B.   Dr. Jackson**

Dr. Jackson conducted a physical functional evaluation

of Plaintiff on September 6, 2013, which is before Plaintiff's
alleged onset date.  Dr. Jackson performed range-of-motion tests,
which indicated only that Plaintiff had "pain with extremes" in
lower-back extension and flexion.  Tr. 494.  Dr. Jackson stated
Plaintiff had moderate difficulty with back pain and moderate-
to-marked difficulty with bilateral knee pain.  Tr. 492.
Dr. Jackson concluded Plaintiff is limited to sedentary work, is
able to lift or to carry ten pounds frequently, and is able to
walk or to stand "only for brief periods."  Tr. 493.

        The ALJ gave Dr. Jackson's opinion "little weight" on
the basis that it was not supported by imaging studies or the
results of her limited examination.  The ALJ also noted
Dr. Jackson's September 6, 2013, treatment notes indicated
Plaintiff's range of motion was "pretty much intact except for
flexion/extension of the hip which is mildly decreased due to
pain."  Tr. 489.  Dr. Jackson also noted Plaintiff had "some
hypermobility" of the patella and "spasm . . . in paraspinous
muscle lumbar spine."  *Id.*  Dr. Jackson ordered x-rays of
Plaintiff's lower spine and knees.  At Plaintiff's follow up
visit with Dr. Jackson in December 2013, Dr. Jackson noted
Plaintiff's x-rays reflected minimal findings.  Tr. 483.

        On this record the Court concludes the ALJ did not err
when he partially rejected Dr. Jackson's opinion because the ALJ
provided clear and convincing reasons for doing so based on

substantial evidence in the record.

   C.   Dr. Duris

        On August 7, 2013, which is before Plaintiff's alleged
onset date, Dr. Duris conducted a psychological evaluation of
Plaintiff for the Washington State Department of Social and
Health Services.  Dr. Duris administered a personality assessment
inventory (PAI), a mental status examination, and the Wechsler
Adult Intelligence Scale (WAIS) examination.  Dr. Duris noted on
the PAI Plaintiff "appeared to approach testing by endorsing
items suggesting a response style consistent with an overly
negative impression of self.  A review of the clinical scales
also demonstrated *the possibility of some* over reporting of his
symptoms."  Tr. 441 (emphasis in original).  Nevertheless,
Dr. Duris stated Plaintiff has marked limitations in his ability
to understand, to remember, and to persist in "tasks by following
detailed instructions"; to communicate and to "perform
effectively in a work setting"; and to "set realistic goals and
to plan independently"; and moderate limitations in his ability
to understand, to remember, and to persist in tasks "by following
very short and simple instructions"; to "perform activities
within a schedule, [to] maintain regular attendance, and [to] be
punctual within customary tolerances without special
supervision"; to perform "routine tasks without special
supervision"; to "adapt to changes in a routine work setting"; to

19 - OPINION AND ORDER

ask simple questions or to request assistance; and to "maintain appropriate behavior in a work setting."  Tr. 444.  Dr. Duris noted the "length of time [Plaintiff] will be impaired with available treatment" as six months.  Tr. 445.

The ALJ gave Dr. Duris's opinion "little weight" because it was "outside the alleged period of review."  Tr. 217. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").  *See also Burkhart v. Bowen*, 856 F.2d 1335, 1340 n. 1 (9th Cir. 1988)(medical opinion is not probative when it predates onset date).  The ALJ also noted Dr. Duris stated the length of Plaintiff's impairment with available treatment was six months, which is an insufficient period to establish disability.  *See* 42 U.S.C. § 423(d)(1)(A)(to establish disability a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months.").

In addition, on March 6, 2014, Philip Barnard, Ph.D., examining neuropsychologist, conducted a psychological evaluation of Plaintiff and concluded Plaintiff is markedly limited only in his ability to understand, to remember, and to persist in "tasks by following detailed instructions" and to maintain appropriate

behavior in a work setting.  Tr. 469.  Dr. Barnard stated the
length of time Plaintiff would be impaired with available
treatment would be no more than nine months.  Tr. 470.

On this record the Court concludes the ALJ did not err
when he partially rejected Dr. Duris's opinion because the ALJ
provided clear and convincing reasons for doing so based on
substantial evidence in the record.

**D.   Dr. Genthe**

On January 15, 2015, Dr. Genthe conducted a
psychological evaluation of Plaintiff.  Dr. Genthe administered
the PAI, a mental-status examination, and the WAIS.  The PAI
results reflected "numerous indications to suggest that the
respondent was motivated to portray himself in an especially
negative or pathological manner." Tr. 602.  Thus, "THE TEST
RESULTS ARE LIKELY TO CONTAIN CONSIDERABLE DISTORTION AND ARE
UNLIKELY TO BE AN ACCURATE REFLECTION OF THE [PLAINTIFF'S]
OBJECTIVE CLINICAL STATUS."  *Id.* (emphasis in original).
Nevertheless, Dr. Genthe stated Plaintiff is markedly limited in
his ability to understand, to remember, and to persist in "tasks
by following detailed instructions"; to adapt to changes in a
work setting; and to communicate and to "perform effectively in a
work setting"; and moderately limited in his ability to
understand, to remember, and to persist in tasks "by following
very short and simple instructions"; to learn new tasks; to

21 - OPINION AND ORDER

perform "routine tasks without special supervision"; to make
simple work-related decisions; to "complete a normal work day and
work week without interruptions from psychologically based
symptoms"; to "maintain appropriate behavior in a work setting";
and to "set realistic goals and to plan independently."  Tr. 596.
Dr. Genthe noted the "length of time [Plaintiff] will be impaired
with available treatment [is] 3-6 months."  *Id.*

        The ALJ gave Dr. Genthe's opinion "little weight" on
the basis of the short expected duration of Plaintiff's symptoms
and indications that Plaintiff possibly exaggerated his symptoms.

        On this record the Court concludes the ALJ did not err
when he partially rejected Dr. Genthe's opinion because the ALJ
provided clear and convincing reasons for doing so based on
substantial evidence in the record.

    **E.    Dr. Burdge**

        On March 18, 2014, Dr. Burdge completed a review of the
opinions of Drs. Barnard and Duris and concluded "[t]he detailed
clinical picture painted by Dr. Duris in Aug. 2013 is quite
different from the one reported by Dr. Barnard March 2014.
Apparently he did not report the same constellation of symptoms
recently.  Dr. Barnard's diagnosis of ADHD and Cannabis Use D/0
are supported."  Tr. 592.

        The ALJ found Dr. Burdge's evaluations to be of "little
evidentiary value as they are based on review of assessments

providing temporary limitations."  Tr. 217.

        The Court has already concluded the ALJ did not err when he gave little weight to the opinions of Drs. Barnard and Duris.  The Court, therefore, also concludes The ALJ did not err when he found the opinion of Dr. Burdge regarding those opinions to be of little evidentiary value.

## IV. The ALJ did not err when he partially rejected the statement of Sean Tabayoyon, M.S.W.

    Plaintiff asserts the ALJ erred when he partially rejected the statement of Sean Tabayoyon, Plaintiff's counselor.

    Medical sources are divided into two categories: "acceptable" and "not acceptable."  20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 416.902.  Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors.  SSR 06-03p, at *2.  Factors the ALJ should consider when determining the weight to give an opinion from those "important" sources include the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise.  SSR 06-03p, at *4.  On the basis of the particular facts and the above factors,

23 - OPINION AND ORDER

the ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an acceptable medical source.  SSR 06-03p, at *5-6.  The ALJ, however, must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p, at *6.

On August 15, 2014, Taybayoyon completed a Medical Source Statement in which he found Plaintiff is severely limited in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" and to "respond appropriately to changes in the work setting."  Tr. 546.  Tabayoyon found Plaintiff is markedly limited in his ability "to remember locations and work-like procedures"; to "understand and remember detailed instructions"; to "carry out detailed instructions"; to "maintain attention and concentration for extended periods"; to "perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances"; to work in coordination with or proximity to others without being distracted by them"; to "interact appropriately with the general public"; to "accept instructions and respond appropriately to criticism from supervisors"; and to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes."  Tr. 545-46.

Tabayoyon stated Plaintiff had extreme restrictions in his activities of daily living and in maintaining concentration, persistence, or pace.  Tr. 547.   Tabayoyon indicated Plaintiff would be off-task "over 30%" of the work week and miss four or more days of work per month.  *Id*.

The ALJ gave Tabayoyon's statement "little weight" on the basis that Tabayoyon met with Plaintiff only one time before providing his statement.  In addition, Tabayonyon's statement was contradicted by Plaintiff's activities of daily living and the fact that Plaintiff is able to maintain an independent lifestyle.

The Court concludes on this record that the ALJ did not err when he gave little weight to Tabayoyon's statement because the ALJ provided legally sufficient reasons supported by the evidence in the record for doing so.

**V.   The ALJ did not err at Step Five.**

Plaintiff asserts the ALJ erred at Step Five when he found Plaintiff could perform other work that exists in the national economy.  Defendant asserts Plaintiff "forfeited" his right to challenge the VE's job-numbers testimony because Plaintiff did not raise the issue before the ALJ or the Appeals Council.

The VE testified at the May 11, 2018, hearing that an individual of Plaintiff's age and with Plaintiff's education, work experience, and RFC could perform the jobs of production assembler, with 80,000 positions in the national economy;

inspector and hand packager, with 60,000 jobs in the national economy; and cleaner and polisher, with 37,000 jobs in the national economy.  The VE testified her opinion was consistent with the Dictionary of Occupational Titles (DOT) and informed by data from the Bureau of Labor Statistics as well as the VE's "20 years of experience performing occupational research."  Tr. 57. Plaintiff's counsel asked the VE several questions at the hearing regarding the number of jobs available if an individual was off-task ten-percent of the day and the effect of more restrictive sit/stand limitations, anger-management issues, use of a cane, and inappropriate work behavior.  Plaintiff's counsel, however, did not ask the VE about her job-numbers testimony or indicate Plaintiff intended to challenge that testimony.  Plaintiff also did not raise any issue with the VE's job-numbers testimony before the Appeals Council.

Plaintiff asserts for the first time in these proceedings that the VE provided "implausible job estimates" at the hearing and that her interpretation of the DOT codes was improper. According to Plaintiff, therefore, the ALJ erred when he relied on the VE's job-numbers testimony at Step Five.

The Ninth Circuit addressed circumstances such as these in *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017).  In *Shaibi* the plaintiff "argued for the first time [on appeal in federal court] that the VE's job estimates" based on the DOT were

26 - OPINION AND ORDER

inaccurate when compared two other sources of job numbers.  883 F.3d at 1108.  The Ninth Circuit held "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel" and absent a showing of "good cause." *Id*. at 1109.  The Ninth Circuit noted its decision was compelled in part by *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), in which the court held "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Id*. at 1115. The Ninth Circuit explained in *Meanel* that "[t]he ALJ, rather than this Court, [is] in the optimal position to resolve the conflict between [the claimant's] new evidence and the statistical evidence provided by the VE."  *Id*.

As noted, Plaintiff here failed to challenge the VE's job-numbers testimony at any time before he raised the issue in this Court.  In addition, Plaintiff does not provide any good cause for his failure to challenge the VE's job-numbers testimony before the ALJ or the Appeals Council.  Plaintiff, however, asserts *Meanel* was overruled by the Supreme Court in *Sims v. Apfel*, 530 U.S. 103 (2000), when the Court held "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve

judicial review of those issues." *Sims*, 530 U.S. at 112.

According to Plaintiff, therefore, he was not required to exhaust

the specific issue of the VE's job-numbers testimony before the

ALJ or the Appeals Council in order to raise that issue before

this Court.

The Ninth Circuit, however, specifically rejected this

argument in *Shaibi*:

> *Sims* does not control this case.  *Sims* concerned
> only whether a claimant must present all relevant
> issues *to the Appeals Council* to preserve them for
> judicial review; the Court specifically noted that
> "[w]hether a claimant must exhaust issues before
> the ALJ is not before us."  *Id*. at 107.  Here,
> Shaibi did not present the job-numbers issue
> before the ALJ or the Appeals Council.  In light
> of the Court's express limitation on its holding
> in *Sims*, we cannot say that . . . holding is
> "clearly irreconcilable" with our decision in
> *Meanel*, and *Meanel* therefore remains binding on
> this court with respect to proceedings before an
> ALJ.

*Shaibi*, 883 F.3d at 1109 (emphasis in original).

The Ninth Circuit recognized in *Shaibi* that "a claimant will

rarely, if ever, be in a position to anticipate the particular

occupations a VE might list and the corresponding job numbers to

which a VE might testify at a hearing," but noted "[i]t is enough

to raise the job-numbers issue in a general sense before the ALJ"

or to raise the issue before the Appeals Council.  *Id*. at 1110.

The Ninth Circuit noted, however, that the plaintiff in *Shaibi*

"did not even obliquely suggest that the VE's job estimates might

be unreliable at any point during the administrative

28 - OPINION AND ORDER

proceedings," and, therefore, concluded the plaintiff "forfeited" his ability to challenge the VE's job-numbers testimony on appeal to the district court.  *Id*.

Plaintiff here, like the plaintiff in *Shaibi*, did not even obliquely suggest the VE's job estimates might be unreliable at any point before the ALJ or Appeals Council.  The Court, therefore, concludes Plaintiff forfeited his ability to challenge the VE's testimony on appeal before this Court.

## <u>CONCLUSION</u>

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 27th day of January, 2022.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge